Carin A. Marney, OSB No. 131945
marneyc@lanepowell.com
**LANE POWELL PC**
601 S.W. Second Avenue, Suite 2100
Portland, Oregon 97204
Telephone:  503.778.2100
Facsimile:  503.778.2200

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| QUALICENTERS SALEM, LLC D/B/A QCI SALEM, ) ) | Case No. 3:21-cv-00295 |
| Plaintiff, ) ) | |
| v. ) | COMPLAINT FOR DAMAGES |
| ) | |
| SHASTA ADMINISTRATIVE SERVICES, INC. and FIRST CHOICE HEALTH NETWORK, INC., ) ) ) | **DEMAND FOR JURY TRIAL** |
| Defendants. ) ) | |

Plaintiff QualiCenters Salem, LLC d/b/a QCI Salem ("QualiCenters Salem"), by and through its undersigned counsel, brings this action against Defendants Shasta Administrative Services, Inc. ("Shasta") and First Choice Health Network, Inc. ("First Choice"), and alleges as follows:

PAGE 1 – COMPLAINT

**LANE POWELL PC**
601 S.W. SECOND AVENUE,
SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

124492.0034/8368157.4

## I.    NATURE OF ACTION

1.    This action arises from Defendant Shasta's failure and refusal to pay Plaintiff QualiCenters Salem at the contractually agreed-upon rates for the outpatient renal dialysis and related services QualiCenters Salem has provided, and continues to provide, to a specific patient, hereinafter referred to as "Patient X."  Shasta administers the health plan of which Patient X is a member and adjudicates healthcare providers' claims for payment.  Shasta and QualiCenters Salem both entered contracts in which they agreed to participate in a preferred provider organization ("PPO") network (the "Network") operated by Defendant First Choice.  By virtue of those agreements, QualiCenters Salem was obligated to accept as patients and provide outpatient renal dialysis treatment and related services to in-Network patients ("Network Patients"), including any patients covered by health plans which Shasta operated or administered.  Shasta agreed to pay QualiCenters Salem and other in-Network healthcare providers at specified rates for the services they provided to Patient X and other patients covered under health plans Shasta operated or administered.  For its part, First Choice agreed that it "shall require" Network payors, like Shasta, to reimburse Network providers, like QualiCenters Salem, at the contractually specified Network rates.

2.    The Network works as follows: Network Patients, such as Patient X, present their insurance cards bearing the First Choice logo, or otherwise establish their status as Network Patients, to in-Network providers ("Providers" or "Network Providers"), such as QualiCenters Salem.  QualiCenters Salem is contractually obligated to accept those patients and treat them.  QualiCenters Salem further routinely calls the entity responsible for payment for the healthcare services received by the Network Patient ("Payors" or "Network Payors") – in this case Shasta – to confirm the patient's status as a Network Patient.  The Network Payor is then obligated to pay QualiCenters Salem for its treatment of the Network Patient in accordance with the rate schedule set forth in QualiCenters Salem's agreement with First Choice ("Network Rates").  First Choice,

PAGE 2 – COMPLAINT

**LANE POWELL PC**
601 S.W. SECOND AVENUE,
SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

124492.0034/8368157.4

is obligated to contractually bind Network Payors to the terms of the Network Provider Contracts and to "require" that the reimbursement QualiCenters Salem receives from Network Payors, including Shasta, "shall be [the Network Rates]."

3.     Patient X began receiving regular outpatient renal dialysis treatments from QualiCenters Salem on or about July 2019.  In arranging to receive dialysis treatment from QualiCenters Salem, Patient X presented his insurance card reflecting the First Choice logo to QualiCenters Salem.  Further, in a telephone call prior to commencing treatment of Patient X and again after Patient X began treatments, Shasta specifically assured QualiCenters Salem that Patient X's plan covered outpatient renal dialysis treatments and that Patient X was part of the Network. Shasta's insurance representative even explicitly represented that the Provider Contract controlled. QualiCenters Salem fully performed its contractual obligations under the Network by accepting Patient X as a patient and providing outpatient renal dialysis treatment and related services to Patient X from July 2019 through the present.

4.     However, after receiving the benefit of their bargains, Shasta and First Choice have regularly failed and refused to fulfill their contractual obligations under the Network.  Specifically, Shasta has failed and refused to pay QualiCenters Salem – and First Choice has failed to require Shasta to pay QualiCenters Salem – at the Network Rates for the outpatient renal dialysis and related services QualiCenters Salem provided to Patient X.

5.     QualiCenters Salem therefore brings this action against Shasta and First Choice to enforce its rights and to recover the damages sustained by QualiCenters Salem as a result of Shasta and First Choice's breaches of their contractual and legal obligations with respect to the Network Rates owed for QualiCenters Salem's services to Patient X from July 2019 to the present.  As of July 2020, the total balance owed was approximately $1.5 million and is continuing to accrue. QualiCenters Salem brings causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, as a third-party beneficiary under Shasta's Network Payor Contract,

PAGE 3 – COMPLAINT

for breach of an implied contract, for fraudulent inducement, for fraud, based on promissory estoppel, and for a declaratory judgment.

6.      For clarity, QualiCenters Salem is ***not*** suing in this action under ERISA to recover benefits under Patient X's health plan, but solely based on the independent contractual and other legal duties owed by Defendant Shasta to pay, and Defendant First Choice to require Shasta to pay, QualiCenters Salem at the Network Rates.  All of the reimbursement claims at issue for the dialysis treatment and related services QualiCenters Salem provided to Patient X have already been adjudicated and paid by Shasta, albeit not at the contractually agreed-upon Network Rates. In other words, Shasta has already determined that QualiCenters Salem's services are covered services under Patient X's health plan.  As such, this action is ***not*** about QualiCenters Salem's ***right to*** payment under the health plan, but solely the ***rate of*** payment at which it should have been reimbursed pursuant to the Defendants' contractual and legal obligations.   Indeed, upon information and belief, neither First Choice nor Shasta ever provided Patient X's health plan to QualiCenters Salem prior to QualiCenters Salem commencing treatment of Patient X.

## II.      PARTIES

7.      QualiCenters Salem is a provider of dialysis treatments to patients with end stage renal disease and/or chronic kidney disease. QualiCenters Salem is a Colorado corporation with its principal place of business at 920 Winter Street, Waltham, Massachusetts 02451.  QualiCenters Salem provides the renal dialysis services at issue in this action to Patient X at QCI Salem in Salem, Oregon.

8.      Defendant Shasta is an Oregon corporation with its principal place of business at 525 SW Umatilla Avenue, Suite 201, Redmond, Oregon, 97756.

9.      Defendant First Choice is a Washington corporation with its principal place of business at 600 University Street, Suite 1400, Seattle, Washington 98101 and which maintains an

PAGE 4 – COMPLAINT

124492.0034/8368157.4

office and conducts business from 10260 SW Greenburg Road, Suite 400, Portland, Oregon 97223. First Choice is registered to conduct business in Oregon.

### III.    JURISDICTION & VENUE

10.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the Parties and the amount in controversy exceeds $75,000 exclusive of interest and costs.

11.    Personal jurisdiction over Shasta is proper in this forum because Shasta is incorporated in and has a principal place of business in the state of Oregon.

12.    Personal jurisdiction over First Choice is proper in this forum because First Choice is registered to conduct business in the state of Oregon, maintains an office in the state of Oregon and regularly conducts business in the state of Oregon with Oregon-based businesses, including but not limited to conducting business with Shasta.

13.    Pursuant to 28 U.S.C. § 1391(b)(3), venue properly lies in this Court because Defendants are subject to this Court's personal jurisdiction with respect to such action and there is no district in which this action may otherwise be brought pursuant to 28 U.S.C. § 1391.

### IV.    FACTUAL BACKGROUND

14.    First Choice operates a healthcare PPO network referred to herein as the "Network."

15.    In order to build the Network, First Choice contracts with both:  (1) healthcare providers, such as QualiCenters Salem ("Network Provider Contracts"); and (2) payors for healthcare services, such as Shasta ("Network Payor Contracts").

16.    These types of network arrangements are common in the healthcare industry.  The operator of the network – in this case First Choice – contracts with a spectrum of healthcare providers, who each agree to treat network patients in exchange for payment at certain, agreed-upon rates, thereby creating the "network."  The operator then rents that network for a fee to

PAGE 5 – COMPLAINT

**LANE POWELL PC**
601 S.W. SECOND AVENUE,
SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

124492.0034/8368157.4

payors, which include health insurance companies, third-party administrators of health plans, health plan sponsors (e.g., employers), and health plans, which contract to obtain access to that network of providers for their enrollees and pay the providers the agreed-upon, discounted rates.

17.    By participating in the Network, healthcare providers such as QualiCenters Salem get the certainty and predictability of fixed network rates for their services.  Health insurance companies, employers, and health plans, in turn, give their enrollees access to a robust network of credentialed providers and the benefit of agreed-upon, discounted rates that are pre-negotiated by the Network.  Third-party administrators, such as Shasta, which rely on self-insured employers and health plans for a large part of their business, get the benefit of being able to market to its prospective customers its ability to grant them access to the Network of providers at discounted rates.

## QualiCenters Salem is a Network Provider

18.    On January 1, 2011, plaintiff QualiCenters Salem entered the First Choice Health Network Healthcare Facility Agreement (the "Provider Contract") with First Choice, as amended, thereby becoming a participating provider in the Network.  From January 1, 2011 to present, and at all times relevant to this Complaint, QualiCenters Salem has been a Network Provider.

19.    Pursuant to the Provider Contract, QualiCenters Salem is required to provide renal dialysis services "pursuant to the terms of this Agreement" to any patient covered by a health plan offered by, or administered by, a Payor contracted to participate in the Network; i.e., a Network Patient.  Provider Contract, ¶ 2.1.

20.    Under the terms of the Provider Contract, QualiCenters Salem is obligated to provide renal dialysis services to Network Patients at specified facilities, including QualiCenters Salem in Salem, Oregon.  *See* Provider Contract, ¶ 2.1, Sched. C.

21.    QualiCenters Salem does not have the discretion to deny treatment to Network Patients who present with insurance ID cards containing the First Choice name and/or logo, or

PAGE 6 – COMPLAINT

**LANE POWELL PC**
601 S.W. SECOND AVENUE,
SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

otherwise where the payor for the Network Patient's healthcare services is listed as a Network Payor on First Choice's website.  Provider Contract, ¶¶ 2.1, 3.9.  The Provider Contract explicitly states that QualiCenters Salem "is obligated to accept any individual as a [Network Patient]" – and provide renal dialysis services to the individual – "when the First Choice . . . logo appears on the individual's [insurance] membership identification card" and/or "where Payor is identified as accessing [First Choice] PPO Network in the [First Choice] tools." *Id.* ¶ 3.9.

22.     The Provider Contract dictates that "[First Choice] shall provide [QualiCenters Salem] with a list of Payors and employer groups at the time of entering into this Agreement. These lists shall be updated quarterly and posted on the [First Choice] web site at: http://www.fchn.com/ppo/providers/payorSearch.aspx." *Id.* ¶ 3.10.  Shasta is listed as a Payor on the First Choice website, and on information and belief, has been throughout the relevant time period.

23.     Paragraph 3.1 of the Provider Contract provides that "[First Choice] ***shall require*** all Payors contracting with it to pay [QualiCenters Salem] for Covered Services rendered to [Network Patients] in accordance with Section 4, Claims Submission and Payment, of this Agreement." *Id.* ¶ 3.1 (emphasis added).  Section 4 of the Provider Contract, in paragraph 4.2 (entitled "Payment of Claims"), provides that First Choice "***shall require all Payors*** to pay [QualiCenters Salem] pursuant to Schedule B" of the ***Provider*** Contract.  *Id.* ¶ 4.2 (emphasis added).

24.     Schedule B of the Provider Contract specifies that "[r]eimbursement for Outpatient Dialysis and Related Services ***shall be*** [at the Network Rates]." *Id.* at Sched. B (emphasis added).

25.     First Choice, in paragraph 4.2 of the Provider Contract (entitled "Payment of Claims"), further explicitly "represents and warrants" to QualiCenters Salem that First Choice "has the contractual ability to bind the Payors to the terms of this Agreement (as applicable thereto) and to cause them to be responsible for their resulting obligations hereunder." *Id.* ¶ 4.2.

PAGE 7 – COMPLAINT

**LANE POWELL PC**
601 S.W. SECOND AVENUE,
SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

124492.0034/8368157.4

26.     Shasta's obligation to pay the Network Rates is reinforced throughout the Provider Contract.  For example, pursuant to paragraph 3.11, "[First Choice] shall ensure that Payors produce an Explanation of Benefits (EOB) during the claim adjudication process which must, at a minimum, identify: [First Choice], total billed charges, [and the] allowed amount *in accordance with [Network] fee schedules*." *Id.* ¶ 3.11 (emphasis added).

27.     In paragraph 2.13, QualiCenters Salem is required to "accept payment as outlined in Schedule B" for services provided to Network Patients, and QualiCenters Salem is explicitly prohibited from billing or collecting from Network Patients any portion of the Network Rates for covered services, except the specific types of patient cost-sharing set forth in the fee schedule of the Provider Contract; i.e., deductibles, co-payments and co-insurance.  *Id.* ¶ 2.8.1 ("[QualiCenters Salem] agrees that in no event, including, but not limited to, non-payment by Payor . . . or breach of this contract shall [QualiCenters Salem] bill, charge, collect a deposit from, seek compensation, remuneration or reimbursement from, or have any recourse against a [Network Patient] or person acting on their behalf, other than Payor, for services provided pursuant to this agreement.  This provision shall not prohibit collection of deductibles, co-payments, coinsurance . . .").

28.     If a Network Payor does not pay QualiCenters Salem in accordance with the Payor's "payment obligations to [QualiCenters Salem]," as set forth in the fee schedule at Schedule B of the Provider Contract, First Choice is obligated to assist QualiCenters Salem "in enforcing this [Provider Contract] as applicable to particular Payors by virtue of any applicable agreement between [First Choice] (or an Affiliate) and such delinquent Payor." *Id.* ¶ 4.2.  First Choice is further obligated "to assist [QualiCenters Salem] in collecting payments due and owning [sic] from any such Payor." *Id.*

29.     The dispute resolution provision of the Provider Contract states that "[d]isputes between [QualiCenters Salem] and a Payor regarding performance under this Agreement shall be resolved, to the extent possible, by informal meetings and discussions," and that "[i]n the event

PAGE 8 – COMPLAINT

**LANE POWELL PC**
601 S.W. SECOND AVENUE,
SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

124492.0034/8368157.4

the parties cannot resolve the matter through the informal or formal process, either party may pursue judicial remedy in a court of competent jurisdiction." *Id.* ¶ 9.1.

**Shasta is a Network Payor**

30.    Shasta entered into a provider access agreement (the "Payor Contract") with Healthcare Direct, on or about January 1, 2008.  At all material times, Healthcare Direct has been a wholly owned subsidiary of Defendant First Choice, and Shasta's Provider Access Agreement constitutes a Network Payor Contract.

31.    The mutual rights and obligations set forth in the Payor Contract together with the Provider Contract comprise the "Network Agreement."

32.    Upon information and belief, Shasta has been a Network Payor in the First Choice Network at all times relevant to this Complaint.

33.    At present, Shasta is listed as a Network Payor on the First Choice website.  The First Choice website states that the "effective date" of Shasta's participation as a Network Payor is January 1, 2006.  Upon information and belief, Shasta has been listed on the First Choice website as a Network Payor at all times relevant to this Complaint.

34.    By operating pursuant to the Payor Contract, Shasta has long secured the benefits of First Choice's contracts with Network Providers such as QualiCenters Salem.

35.    Consistent with the fundamental purpose of PPO networks in general and the Network in particular, Shasta agreed, in exchange for access to First Choice's Network of providers, to pay Network Providers, including QualiCenters Salem, the Network Rates for covered services.  The applicable rates as to QualiCenters Salem are set forth in Schedule B of QualiCenters Salem's Provider Contract.

36.    This agreement is reinforced throughout the Payor Contract.  Shasta's Payor Contract with First Choice sets forth that "[First Choice] agrees to provide [Shasta] access to [First Choice's] Provider Network . . . ." Payor Contract, § I.  Shasta agrees to pay First Choice fees "for

PAGE 9 – COMPLAINT

**LANE POWELL PC**
601 S.W. SECOND AVENUE,
SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

124492.0034/8368157.4

Network access." *Id.* § III.  It further provides that Shasta "will not enter into any agreements with any other health care networks" within First Choice's service area "[u]nless otherwise mutually agreed in writing." *Id.* § II(A)(i).

37.    The Payor Contract provides that First Choice "will distribute the rates for each contracted provider to [Shasta] or its designated claims administrator." *Id.*  It further provides that, if Shasta will not be the party "hosting the fee schedules and re-pricing claims this distribution of rates will not occur." *Id.*  In the case of Patient X, upon information and belief, Shasta submitted claims from QualiCenters Salem to First Choice for re-pricing pursuant to Schedule B of the Provider Contract and paid First Choice a monthly fee to re-price claims from Network Providers, including from QualiCenters Salem, for its treatment of Patient X.

38.    The Payor Contract further mandates that Shasta, "shall pay contracted providers or cause them to be paid for covered services within thirty (30) days of receipt of claims . . . ." *Id.* § II(A)(ii).  Shasta is further required "to issue . . . an explanation of benefits (EOB) to the . . . contracted provider for each claim from a contracted provider, and to identify the applicable reimbursement amount on the EOB."

39.    The Payor Contract further provides that Shasta may only "cease reimbursing providers," such as QualiCenters Salem, "at the contracted rates" upon termination of the Payor Contract.  *Id.* § VI(v)(b).

40.    First Choice also retained audit rights under the Payor Contract to periodically audit Shasta's records "to determine if the rate established for each contracted provider has been priced appropriately and accurately." *Id.* § VII(x).

41.    The Payor Contract provides that Shasta "shall promptly notify" First Choice of Shasta's "inability to meet its payment obligations to contracted providers." *Id.* § II(A)(iv).

PAGE 10 – COMPLAINT

124492.0034/8368157.4

42.     Shasta's participation in the Network required QualiCenters Salem to accept Patient X as a Network Patient and provide treatment to Patient X in exchange for Shasta's agreement that it would pay QualiCenters Salem for those services at the Network Rates.

43.     To ensure that Shasta's Network Patients are able to obtain the bargained-for right to receive health care services from Network Providers such as QualiCenters Salem, the Payor Contract mandates that Shasta shall issue to all of its Network Patients insurance identification cards which include the Network name and/or logo.

44.     Shasta administered the claims for payment submitted by QualiCenters Salem for the outpatient renal dialysis and related services it provided to Patient X.

45.     Upon information and belief, pursuant to the Payor Contract, First Choice was responsible for and did re-price claims administered by Shasta in accordance with the applicable Network Rates and provided the re-pricing to Shasta for purposes of administering and paying the reimbursement claims submitted by QualiCenters Salem for its treatment of Patient X.

46.     Accordingly, upon information and belief, Shasta was aware, on a claim by claim basis, of the applicable Network Rates that it should have paid on the claims submitted by QualiCenters Salem for the outpatient renal dialysis and related services it provided to Patient X.

**Patient X Is a Network Patient**

47.     Patient X is insured by a health plan administered by Shasta and is therefore a Network Patient to which QualiCenters Salem was contractually obligated to provide renal dialysis services in exchange for payment at the Network Rates, pursuant to the terms of the Provider Contract and the Payor Contract.

48.     Because Patient X is a Network Patient, QualiCenters Salem is also contractually prohibited from billing Patient X for any portion of the Network Rates left unpaid by Shasta (except any applicable copayments, coinsurance and deductibles), even in the case of Shasta's breach of the Payor Contract.

PAGE 11 – COMPLAINT

124492.0034/8368157.4

49.    In or about July 2019, Patient X sought to arrange to receive outpatient renal dialysis treatments and related services from QualiCenters Salem.

50.    Patient X presented his insurance card to QualiCenters Salem.  Patient X's insurance card included the First Choice name and/or logo on the card.

51.    Prior to providing outpatient dialysis treatments to Patient X, on July 3, 2019, QualiCenters Salem contacted Shasta regarding Patient X's insurance coverage and network status.  A Shasta insurance representative named "Melissa A" confirmed that First Choice was the "Network Used" and that Patient X's health plan covered outpatient dialysis treatments.

52.    During that call, the Shasta insurance representative, "Melissa A," explicitly represented that the Provider Contract controlled and that Shasta was the "payor at risk."

53.    In reliance on those representations, QualiCenters Salem accepted Patient X as a patient and provided outpatient dialysis treatments and related services to Patient X which continue to this day.  QualiCenters Salem did so in reliance on:  (1) the First Choice name and/or logo on Patient X's insurance card; (2) Shasta's explicit representation, made before QualiCenters Salem began providing treatments to Patient X, that Patient X's plan covered outpatient dialysis treatments and that the First Choice Network was the "Network Used" by Shasta for obtaining treatment from QualiCenters Salem for Patient X; (3) Shasta's obligations to pay QualiCenters Salem at the Network Rates for services to Network Patients; and (4) First Choice's contractual and legal obligations to bind Shasta to the terms of the Provider Contract and to require Shasta to pay QualiCenters Salem at the Network Rates for services to Network Patients.

54.    At no time prior to QualiCenters Salem commencing treatment of Patient X did First Choice or Shasta assert that QualiCenters Salem would not be reimbursed at the Network Rates for services provided to Patient X.

55.    QualiCenters Salem again contacted Shasta on October 21, 2019 concerning Patient X's network status and insurance coverage. A Shasta insurance representative named "Kaity"

PAGE 12 – COMPLAINT

**LANE POWELL PC**
601 S.W. SECOND AVENUE,
SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

124492.0034/8368157.4

again confirmed that First Choice was the "Network Used" and that Patient X's health plan covered outpatient dialysis treatments.

56.    QualiCenters Salem provided regular dialysis treatments and related services to Patient X from on or about July, 2019 through the date of filing of this Complaint.

**Shasta Has Not Paid QualiCenters Salem at the Network Rates for Treatment of Patient X**

57.    As set forth above, Shasta was obligated to reimburse QualiCenters Salem for the services it provided to Patient X at the Network Rates.

58.    Shasta in fact reimbursed QualiCenters Salem for the services it provided to Patient X at rates substantially below the Network Rates, and often as low as 7% of the Network Rates.

59.    On February 2, 2018, First Choice sent an e-mail to Shasta specifically advising Shasta that First Choice's Network Provider Contracts did not allow for the use of "alternative dialysis solutions," including those like Renalogic, Inc. ("Renalogic").  Renalogic describes itself as a "dialysis cost containment" company that re-prices outpatient dialysis reimbursement claims at fixed rates that Renalogic unilaterally sets.  Those so-called "U&R" rates are starkly lower than the rates to which QualiCenters Salem, First Choice and Shasta had agreed.

60.    More than 18 months after being advised that the use of such "alternative dialysis solutions" violated the First Choice Network Provider Contracts, Shasta relied upon Renalogic's re-pricing of QualiCenters Salem's claims for reimbursement at Renalogic's own "U&R" rates. Shasta paid QualiCenters Salem at those "U&R" rates, which are dramatically lower than the Network Rates.

61.    Shasta also did not, as required under the Provider Contract, issue EOBs relating to the services QualiCenters Salem provided to Patient X in which Shasta calculated the "allowed amount" in accordance with Schedule B of QualiCenters Salem's Provider Contract – or even referencing the "allowed amount" required by Schedule B of QualiCenters Salem's Provider

PAGE 13 – COMPLAINT

**LANE POWELL PC**
601 S.W. SECOND AVENUE,
SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

124492.0034/8368157.4

Contract.  Indeed, in the overwhelming majority of claims, Shasta listed the "PPO Discount" as $0 and ignored entirely the existence of the First Choice Network.

62.    Upon information and belief, pursuant to its Payor Contract, Shasta provided First Choice with "a report listing aggregate claims submitted by each contracted provider" at least once every 90 days that included the provider name, billed charges and allowed charges.  Payor Contract, § II(A)(iv).

63.    Under the Payor Contract, First Choice also retained audit rights to periodically audit Shasta's records "to determine if the rate established for each contracted provider has been priced appropriately and accurately." *Id.* § VII(x).

64.    QualiCenters Salem complied with the informal and formal dispute resolution processes set forth in the Provider Contract with respect to both Shasta and First Choice.  On or about May 11, 2020, QualiCenters Salem sent a letter to Shasta formally notifying Shasta that it underpaid QualiCenters Salem for services provided to Patient X.

65.    QualiCenters Salem sent a number of follow-up letters to Shasta, notifying Shasta that it had underpaid QualiCenters Salem for services QualiCenters Salem provided to Patient X beginning in July 2019, and demanding that Shasta reimburse QualiCenters Salem at the applicable Network Rates for those services.  QualiCenters Salem sent such letters dated November 20, 2020 and December 31, 2020.

66.    Shasta provided a substantive response via letter dated January 20, 2021 expressly rejecting QualiCenters Salem's demand.

67.    To date, Shasta has not reimbursed QualiCenters Salem at the Network Rates for the services QualiCenters Salem provided to Patient X.

68.    On or about May 13, 2020, QualiCenters Salem sent a letter to First Choice formally notifying First Choice that Shasta was breaching the Network Agreement and refusing to reimburse QualiCenters Salem at the Network Rates for the services QualiCenters Salem provided

PAGE 14 – COMPLAINT

**LANE POWELL PC**
601 S.W. SECOND AVENUE,
SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

124492.0034/8368157.4

to Patient X.  QualiCenters Salem further requested that First Choice comply with its contractual obligations and take all steps necessary to ensure that Shasta correct the past underpayments and its payment processing going forward so as to pay the Network Rate.  First Choice did not respond.

69.     QualiCenters Salem wrote to First Choice again via letter on November 20, 2020. QualiCenters Salem demanded that First Choice: (1) ensure that only First Choice or Shasta re-price QualiCenters Salem's reimbursement claims for services to Patient X and require it to pay those claims at the Network Rates; (2) ensure that Shasta produces EOBs determining the allowed amount at the Network Rates; (3) assist QualiCenters Salem in enforcing Shasta's obligations under the Network Agreement with regard to payments for services rendered to Patient X; (4) assist QualiCenters Salem in collecting payments due and owing from Shasta for services rendered to Patient X; and (5) exercise First Choice's contractual authority to enforce Shasta's Network obligations.

70.     In response to the letter, First Choice did not and has not required Shasta to properly reimburse QualiCenters Salem at the Network Rates for its services to Patient X.  Nor has First Choice otherwise complied with its obligations to QualiCenters Salem with respect to Shasta's failure to comply with its Network obligations.

71.     Shasta has never re-processed QualiCenters Salem's claims for treatment of Patient X to pay QualiCenters Salem at the Network Rates.

72.     As a result of the improper actions and inactions of Shasta and First Choice, as of July 2020, QualiCenters Salem had already sustained damages of at least $1.5 million as of that date.  QualiCenters Salem's damages have continued to accrue since July 2020 and continue to accrue as of the date of the filing of this Complaint.

PAGE 15 – COMPLAINT

**LANE POWELL PC**
601 S.W. SECOND AVENUE,
SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

124492.0034/8368157.4

## V.    FIRST CAUSE OF ACTION

### (Breach of Contract as Third-Party Beneficiary of Payor Contract
### Against Defendant Shasta)

73.    QualiCenters Salem realleges paragraphs 1 through 72 and incorporates them herein as if set forth in full, and further alleges as follows:

74.    The Payor Contract is a valid and enforceable contract between First Choice, Shasta, and QualiCenters Salem as an intended, necessary, and direct third-party beneficiary.

75.    By virtue of the Payor Contract, Shasta joined the Network as a Network Payor.

76.    By virtue of the Payor Contract, Shasta secured the benefits of First Choice's contracts with Network Providers, including the Provider Contract with QualiCenters Salem.

77.    To obtain the benefits of First Choice's contracts with Network Providers, including the Provider Contract with QualiCenters Salem, Shasta agreed to comply with all terms and conditions of the Provider Contract that are applicable to Payors such as Shasta, including the obligation to pay QualiCenters Salem at the Network Rates set forth in Schedule B of the Provider Contract.

78.    Pursuant to the Payor Contract, for the benefit of Network Providers including QualiCenters Salem, Shasta agreed to either re-price QualiCenters Salem's claims itself, or to have First Choice re-price those claims, and in either case agreed to pay those claims in accordance with the Network Rates as set forth in the Provider Contract.

79.    Pursuant to the Payor Contract, for the benefit of Network Providers including QualiCenters Salem, Shasta agreed to pay the claims of QualiCenters Salem within 30 days of Shasta's receipt of those claims.

80.    Pursuant to the Payor Contract, for the benefit of Network Providers including QualiCenters Salem, Shasta agreed to be listed as a First Choice Network Payor and agreed to

PAGE 16 – COMPLAINT

124492.0034/8368157.4

issue and distribute insurance identification cards for members to present to Network Providers that prominently display the First Choice Network name and/or logo.

81.    Pursuant to the Payor Contract, for the benefit of Network Providers including QualiCenters Salem, Shasta was required to provide EOBs to Network Providers, including QualiCenters Salem, that determined the "allowed amount" in accordance with the fee schedule in the applicable Provider Contract.

82.    Pursuant to the Payor Contract, for the benefit of Network Providers including QualiCenters Salem, Shasta remains obligated post-termination to pay QualiCenters Salem "at the contracted rates" for members receiving services from QualiCenters Salem prior to the termination effective date, including Patient X.

83.    The Payor Contract necessarily and directly benefits QualiCenters Salem.

84.    The terms of the Payor Contract objectively reflect the intent of First Choice and Shasta that Network Providers, including QualiCenters Salem, were necessary and direct beneficiaries of the Payor Contract.

85.    At the time that Shasta and First Choice entered the Payor Contract, they intended for Shasta to assume direct obligations to QualiCenters Salem, including the obligation to reimburse QualiCenters Salem directly at the rates set forth in the Provider Contract for the services it provided to Network Patients, including Patient X.

86.    Shasta cannot perform its obligations under the Payor Contract with respect to the treatment of Network Patients, including Patient X, without bestowing direct and necessary benefits on Network Providers, including QualiCenters Salem.

87.    QualiCenters Salem is a necessary, direct and intended third-party beneficiary of the Payor Contract.

88.    As a third-party beneficiary of the Payor Contract, QualiCenters Salem is entitled to enforce the provisions of the Payor Contract against Shasta.  The dispute resolution provision

PAGE 17 – COMPLAINT

**LANE POWELL PC**
601 S.W. SECOND AVENUE,
SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

124492.0034/8368157.4

of the Provider Contract expressly sets forth the procedure for QualiCenters Salem to follow to enforce those obligations against a Payor such as Shasta, including bringing a lawsuit in any court of competent jurisdiction.

89.    QualiCenters Salem has performed all of its obligations under the Payor Contract.

90.    Shasta has materially breached the Payor Contract, as set forth above, including but not limited to: (1) its failure and refusal to reimburse QualiCenters Salem for its treatment of Patient X at the Network Rates; (2) its failure and refusal to re-process QualiCenters Salem's claims for treatment of Patient X at the Network Rates, despite numerous requests; and (3) its use of Renalogic to re-price QualiCenters Salem's claims at Renalogic's so-called "U&R" rates.

91.    As a result of Shasta's breaches of the Payor Contract, as of July 2020, QualiCenters Salem had been harmed and had suffered substantial damages of approximately $1.5 million.  QualiCenters Salem's damages have continued to accrue since July 2020 and continue to accrue as of the date of the filing of this Complaint.

## VI.    SECOND CAUSE OF ACTION

### (Breach of Provider Contract Against Defendant First Choice)

92.    QualiCenters Salem realleges paragraphs 1 through 91 and incorporates them herein as if set forth in full, and further alleges as follows:

93.    The Provider Contract is a valid and enforceable contract between QualiCenters Salem and First Choice.

94.    Among other obligations, First Choice is obligated under the Provider Contract to "require" Network Payors, including Shasta, to pay QualiCenters Salem in accordance with the Network Rates set forth in Schedule B to the Provider Contract.

95.    First Choice promised QualiCenters Salem in the Provider Contract that First Choice "has the contractual ability to bind the Payors to the terms of this Agreement (as applicable

PAGE 18 – COMPLAINT

**LANE POWELL PC**
601 S.W. SECOND AVENUE,
SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

124492.0034/8368157.4

thereto) and to cause them to be responsible for their resulting obligations hereunder."  Provider Contract ¶ 4.2.

96.     QualiCenters Salem has fully performed all of its obligations under the Provider Contract, including by providing outpatient dialysis services to Patient X from on or about July 2019 to present.

97.     Upon information and belief, First Choice was aware from periodic reporting from Shasta that Shasta was ignoring the First Choice re-pricing and not paying QualiCenters Salem at the Network Rates for its treatment of Patient X.

98.     Upon information and belief, First Choice was further aware based on its exercise of its audit rights (for the purpose of ensuring payment was being made at the Network Rates) that Shasta was in fact ***not*** paying QualiCenters Salem at the Network Rates for its treatment of Patient X.  Alternatively, First Choice elected not to exercise its audit rights "to determine if the rate established for [QualiCenters Salem] has been priced appropriately and accurately," despite the fact that First Choice knew, or should have known, that Shasta was not paying QualiCenters Salem at the Network Rates for its treatment of Patient X.

99.     On or about May 13, 2020, QualiCenters Salem sent a letter to First Choice formally notifying First Choice that Shasta breached the Network Agreement and refused to reimburse QualiCenters Salem at the Network Rates for the services QualiCenters Salem provided to Patient X.  QualiCenters Salem further requested that First Choice comply with its contractual obligations by, among other things, requiring Shasta to reimburse QualiCenters Salem at the Network Rates for services provided to Patient X.

100.     To date, Shasta has paid QualiCenters Salem at Renalogic's so-called "U&R" rates and has never paid QualiCenters Salem at the Network Rates for the services provided to Patient X, nor has it re-processed QualiCenters Salem's claims for treatment of Patient X under the Network Agreement to pay at the Network Rates.

PAGE 19 – COMPLAINT

**LANE POWELL PC**
601 S.W. SECOND AVENUE,
SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

124492.0034/8368157.4

101.    First Choice has materially breached the Provider Contract, as set forth above, including but not limited to by: (1) failing and refusing to require Shasta to reimburse QualiCenters Salem for its services to Patient X at the Network Rates; (2) failing to "ensure" that Shasta re-priced QualiCenters Salem's claims for payment pursuant to the Provider Contract; (3) failing and refusing to ensure that Shasta produced EOBs referencing First Choice and determining the allowed amount at the Network Rates; (4) failing and refusing to assist QualiCenters Salem in enforcing Shasta's obligations under the Provider Contract; (5) failing and refusing to assist QualiCenters Salem in collecting payments due and owing from Shasta; and (6) failing and refusing to exercise its promised contractual authority to cause Shasta to be responsible for its obligations under the Provider Contract, or alternatively, by failing and refusing to contractually bind Shasta to the terms of the Provider Contract, as promised.

102.    As a result of First Choice's breaches of the Provider Contract, as of July 2020, QualiCenters Salem had been harmed and had suffered substantial damages of approximately $1.5 million.   QualiCenters Salem's damages have continued to accrue since July 2020 and continue to accrue as of the date of the filing of this Complaint.

## VII.    THIRD CAUSE OF ACTION

### (Breach of the Implied Covenant of Good Faith and Fair Dealing Against Defendants First Choice and Shasta)

103.    QualiCenters Salem realleges paragraphs 1 through 102 and incorporates them herein as if set forth in full, and further alleges as follows:

104.    The Provider Contract, the Payor Contract, and the Network Agreement are valid and enforceable contracts between QualiCenters Salem, First Choice, and Shasta.

105.    The law implies a covenant of good faith and fair dealing into every contract.

106.    As set forth above, First Choice secured QualiCenters Salem's agreement to join the Network by promising that QualiCenters Salem would be paid by all Network Payors at the

PAGE 20 – COMPLAINT

LANE POWELL PC
601 S.W. SECOND AVENUE,
SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

124492.0034/8368157.4

Network Rates, in return for providing dialysis services to Network Patients. In the Provider Contract, First Choice repeatedly promised to QualiCenters Salem that First Choice has the "contractual authority to bind" and "shall require" all of its Network Payors to reimburse QualiCenters Salem at the Network Rates. In short, QualiCenters Salem's reasonable contractual expectation was that it would receive payment from Shasta at the Network Rates for its treatment of Patient X, and First Choice understood and fostered that expectation.

107.    Pursuant to the Payor Contract, Shasta intended to secure the benefits of First Choice's contracts with Network Providers such as QualiCenters Salem.

108.    Pursuant to the Payor Contract, Shasta agreed to be responsible for compliance with all terms and conditions of QualiCenters Salem's Provider Contract that are applicable to Payors such as Shasta, including the obligation to pay QualiCenters Salem for its treatment of Patient X at the Network Rates set forth in Schedule B of the Provider Contract.

109.    Pursuant to the Payor Contract, for the benefit of Network Providers, including QualiCenters Salem, Shasta became listed as a First Choice Network Payor and was required to issue insurance identification cards for members, including Patient X, to present to Network Providers, including QualiCenters Salem, that prominently display the First Choice Network name and/or logo.

110.    First Choice and, upon information and belief, Shasta understood that Network Providers, including QualiCenters Salem, were contractually obligated to treat Shasta's members, including Patient X, by virtue of the fact that Shasta was a Network Payor.

111.    Shasta understood that, by virtue of its Payor Contract with First Choice, it would be presented by First Choice as a Network Payor to First Choice's Network of Providers, including QualiCenters Salem, thereby implicating Shasta's obligation to pay QualiCenters Salem at the rates set forth in Schedule B of the Provider Contract.

PAGE 21 – COMPLAINT

**LANE POWELL PC**
601 S.W. SECOND AVENUE,
SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

112.    Shasta prepared Patient X's insurance card, to be presented to Network Providers such as QualiCenters Salem, to feature the First Choice name and/or logo that implicated Shasta's obligation to pay QualiCenters Salem at the rates set forth in Schedule B of the Provider Contract.

113.    Prior to providing outpatient dialysis treatments to Patient X, on July 3, 2019, QualiCenters Salem contacted Shasta regarding Patient X's insurance coverage.  A Shasta insurance representative named "Melissa A" confirmed that First Choice was the "Network Used" and that Patient X's health plan covered outpatient dialysis treatments.

114.    During that call, the Shasta insurance representative, "Melissa A," explicitly represented that the Provider Contract controlled and that Shasta was the "payor at risk."

115.    QualiCenters Salem again contacted Shasta on October 21, 2019 concerning Patient X's insurance coverage.  A Shasta insurance representative named "Kaity" again confirmed that First Choice was the "Network Used" and that Patient X's health plan covered outpatient dialysis treatments.

116.    Like First Choice, Shasta understood and fostered QualiCenters Salem's reasonable contractual expectation that it would receive payment from Shasta at the Network Rates for its treatment of Patient X.

117.    Pursuant to the Payor Contract, for the benefit of Network Providers including QualiCenters Salem, First Choice agreed to provide Shasta with QualiCenters Salem's re-pricing information in order for Shasta to re-price QualiCenters Salem's claims and pay the Network Rates as set forth in the Provider Contract.

118.    Upon information and belief, on a claim by claim basis, First Choice re-priced QualiCenters Salem's claims for its treatment of Patient X at the Network Rates and provided the contractually required re-pricing to Shasta for its use in processing and payment of those claims.

PAGE 22 – COMPLAINT

**LANE POWELL PC**
601 S.W. SECOND AVENUE,
SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

124492.0034/8368157.4

119.    Prior to Patient X commencing treatment with QualiCenters Salem, First Choice specifically advised Shasta that its use of "alternative dialysis solutions" such as Renalogic violated the First Choice Network Provider Contracts.

120.    Nevertheless, Shasta ignored the First Choice re-pricing at the Network Rates and instead processed and paid QualiCenters Salem's claims for its treatment of Patient X based on Renalogic's re-pricing of the claims at its so-called "U&R" rates, which are dramatically lower than the Network Rates and thereby denied QualiCenters Salem the fruits of its contract.

121.    Upon information and belief, pursuant to its Payor Contract, Shasta provided First Choice with "a report listing aggregate claims submitted by each contracted provider" at least once every 90 days that included the provider name, billed charges and allowed charges.  Under the Payor Contract, First Choice also retained audit rights to periodically audit Shasta's records "to determine if the rate established for each contracted provider has been priced appropriately and accurately."

122.    Upon information and belief, Shasta and First Choice intended that the Payor Contract would necessarily and directly benefit Network Providers, including QualiCenters Salem, by requiring payment to them at fixed, guaranteed rates set forth in the Network Provider Contracts, for the services they provided to Network Patients, including Patient X.

123.    At no time prior to QualiCenters Salem's commencement of treatment of Patient X did Shasta or First Choice advise QualiCenters Salem that Shasta or First Choice believed Shasta was *not* required to fulfill its express and unqualified obligations under the Payor Contract, Provider Contract, and Network Agreement to pay QualiCenters Salem for its treatment of Patient X in accordance with QualiCenters Salem's reasonable contractual expectation, an expectation that Shasta and First Choice understood and had taken care to foster.

124.    As set forth above, Shasta has not reimbursed QualiCenters Salem for its treatment of Patient X at the Network Rates and has instead paid rates starkly below the Network Rates,

PAGE 23 – COMPLAINT

**LANE POWELL PC**
601 S.W. SECOND AVENUE,
SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

124492.0034/8368157.4

often as low as 7% of the Network Rates.  First Choice has not required Shasta to comply with its Network obligations and reimburse QualiCenters Salem at the Network Rates.

125.    To the extent that Shasta were to disclaim any contractual obligations to QualiCenters Salem, First Choice has, in the alternative, further breached its promise in the Provider Contract that it "[had] the contractual ability to bind the Payors to the terms of th[e] [Provider Contract] and cause them to be responsible for their resulting obligations [there]under."

126.    Shasta and First Choice have retained the full benefit of QualiCenters Salem's performance under the Provider Contract, the Payor Contract, and the Network Agreement because QualiCenters Salem has complied with its obligations and continually provided outpatient renal dialysis treatments and related services to Patient X.

127.    Shasta and First Choice have acted in bad faith and to deny QualiCenters Salem the fruits and its reasonably expected benefit under the Provider Contract, the Payor Contract, and the Network Agreement – i.e. reimbursement for its services to Patient X at the Network Rates – and frustrated QualiCenters Salem's attempts to obtain the benefit of its bargain.

128.    To the extent Shasta and First Choice were found not to have breached express contractual obligations to QualiCenters Salem, in the alternative, Shasta and First Choice's acts and failures to act constitute a breach of the implied covenant of good faith and fair dealing.

129.    As a result of Shasta and First Choice's breaches of the implied covenant of good faith and fair dealing, QualiCenters Salem has been harmed, has not received its reasonably expected benefit under the contracts, and had already suffered substantial damages in the amount of approximately $1.5 million as of July 2020.  QualiCenters Salem's damages have continued to accrue since July 2020 and continue to accrue as of the date of the filing of this Complaint.

PAGE 24 – COMPLAINT

LANE POWELL PC
601 S.W. SECOND AVENUE,
SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

124492.0034/8368157.4

## VIII.    FOURTH CAUSE OF ACTION

### (Breach of Contract (Promissory Estoppel) Against First Choice and Shasta)

130.    QualiCenters Salem realleges paragraphs 1 through 129 and incorporates them herein as if set forth in full, and further alleges as follows:

131.    To secure QualiCenters Salem's participation in the Network – and with knowledge that QualiCenters Salem was acting in reliance on its promise – First Choice promised QualiCenters Salem that First Choice "shall require all Payors" contracting with it to pay QualiCenters Salem for services rendered to Network Patients at the Network Rates, in accordance with Schedule B of QualiCenters Salem's Provider Contract.

132.    To secure QualiCenters Salem's participation in the Network – and with knowledge that QualiCenters Salem was acting in reliance on its promise – First Choice promised QualiCenters Salem that First Choice "shall ensure" that all Payors contracting with it will re-price QualiCenters Salem's claims for treatment of a Network Patient under the Network Agreement and in accordance with Schedule B of the Provider Contract, and further will produce  EOBs identifying the First Choice Network and determining the allowed amount in accordance with Schedule B of the Provider Contract.

133.    To secure QualiCenters Salem's participation in the Network – and with knowledge that QualiCenters Salem was acting in reliance on its promise – First Choice promised QualiCenters Salem that First Choice "has the contractual ability to bind the Payors to the terms of th[e] [Provider Contract] and cause them to be responsible for their resulting obligations [there]under."

134.    Patient X sought in July 2019 to arrange to receive outpatient dialysis treatments and related services from QualiCenters Salem.

135.    QualiCenters Salem reasonably and detrimentally relied on First Choice's promises in agreeing to enter into the Provider Contract and later in agreeing to treat Patient X.

PAGE 25 – COMPLAINT

136.    Shasta knowingly became a Network Payor that was and is identified as such by First Choice on its website and its list of Network Payors.  Shasta issued an insurance card to Patient X featuring the First Choice Network name and/or logo, knowing that its status as a Network Payor and the First Choice name and/or logo on its insurance card would be relied upon by Network Providers, including QualiCenters Salem, and intending to induce their reliance in agreeing to treat Patient X.  Shasta knew and intended that Network Providers, including QualiCenters Salem, would rely on Shasta's status as a Network Payor and the First Choice name and/or logo featuring on Patient X's insurance identification card to determine the rates at which they would be reimbursed by Shasta for their services if they agreed to treat Patient X.

137.    Patient X presented his insurance card to QualiCenters Salem prior to QualiCenters Salem treating Patient X.

138.    Prior to providing outpatient dialysis treatments to Patient X, on July 3, 2019, QualiCenters Salem contacted Shasta regarding Patient X's insurance coverage.  A Shasta insurance representative named "Melissa A" confirmed that First Choice was the "Network Used" and that Patient X's health plan covered outpatient dialysis treatments.

139.    During that call, the Shasta insurance representative, "Melissa A," explicitly represented that the Provider Contract controlled and that Shasta was the "payor at risk".

140.    In making those representations, Shasta knew those representations would be relied upon by QualiCenters Salem, and intended to induce its reliance in agreeing to treat Patient X. Shasta knew that the fundamental purpose of the call in which Shasta made those representations was so that QualiCenters Salem, prior to agreeing to treat Patient X, could verify that Patient X's health plan covered outpatient dialysis services and the applicable network that would apply to determine how much QualiCenters Salem would be reimbursed by Shasta.

141.    Patient X was accepted by QualiCenters Salem as a patient and treated.

PAGE 26 – COMPLAINT

**LANE POWELL PC**
601 S.W. SECOND AVENUE,
SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

142.    After QualiCenters Salem began treating Patient X, QualiCenters Salem again contacted Shasta on October 21, 2019 concerning Patient X's insurance coverage.  A Shasta insurance representative named "Kaity" again confirmed that First Choice was the "Network Used" and that Patient X's health plan covered outpatient dialysis treatments.

143.    QualiCenters Salem reasonably and detrimentally relied on Shasta's promises in accepting Patient X as a patient on or about July 2019 and in thereafter providing services to him.

144.    First Choice also reasonably expected, or should have reasonably expected, that its promises to QualiCenters Salem would induce QualiCenters Salem to rely on them to treat Network Patients, such as Patient X, based on the understanding that its claims would be processed under the Provider Contract it signed and would be reimbursed by the Payor at the Network Rates.

145.    QualiCenters Salem relied on Shasta and First Choice's promises to its detriment, because contrary to those promises, Shasta did not in fact reimburse QualiCenters Salem at the Network Rates for the services it provided to Patient X, and First Choice did not require Shasta to do so.

146.    To the contrary, Shasta reimbursed QualiCenters Salem for services provided to Patient X based on Renalogic's so-called "U&R" rates that Shasta and First Choice knew to be in violation of the Provider Contract and far below the Network Rates, and First Choice did not to require or compel Shasta to adhere to its Network obligations.

147.    QualiCenters Salem will suffer an injustice if Shasta and First Choice are permitted to renege on their promises to QualiCenters Salem after inducing QualiCenters Salem's performance in reliance on those promises and receiving the benefit of QualiCenters Salem's performance.

148.    To the extent Shasta and/or First Choice were found not to have express contractual obligations to QualiCenters Salem, in the alternative, Shasta and First Choice are bound under the

PAGE 27 – COMPLAINT

LANE POWELL PC
601 S.W. SECOND AVENUE,
SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

124492.0034/8368157.4

doctrine of promissory estoppel from contesting that their promises to QualiCenters Salem are contractually enforceable.

149.    QualiCenters Salem has been harmed by its detrimental reliance on the promises of Shasta and First Choice, and has already suffered substantial damages in the amount of approximately $1.5 million through July 2020.  QualiCenters Salem's damages have continued to accrue since July 2020 and continue to accrue as of the date of the filing of this Complaint.

## IX.    FIFTH CAUSE OF ACTION

### (Breach of Network Agreement Against Defendants Shasta and First Choice)

150.    QualiCenters Salem realleges paragraphs 1 through 149 and incorporates them herein as if set forth in full, and further alleges as follows:

151.    The Network Agreement, defined as the mutual rights and obligations set forth in the Payor Contract together with the Provider Contract, is a valid and enforceable contract between QualiCenters Salem, First Choice, and Shasta.

152.    First Choice designed the operation of its Network to be governed by the rights and obligations set forth in both the Network Provider Contracts and the Network Payor Contracts, which work together symbiotically and incorporate the terms of one another by reference.  The rights and obligations under the Network Provider Contracts could not, by their terms, be enforceable without the existence of, and without reference to, the rights and obligations set forth in the Network Payor Contracts, and vice versa.

153.    Shasta joined the Network as a Network Payor by virtue of the Payor Contract.

154.    QualiCenters Salem joined the Network as a Network Provider by virtue of the Provider Contract.

155.    By virtue of the Payor Contract, Shasta intended to secure the benefits of First Choice's contracts with the Network Providers such as QualiCenters Salem.

PAGE 28 – COMPLAINT

124492.0034/8368157.4

156.    By virtue of the Provider Contract, QualiCenters Salem intended to secure the benefits of First Choice's contracts with Network Payors such as Shasta.

157.    Network Payors, including Shasta, agreed in their Network Payor Contracts to pay Network Providers at the negotiated rates set forth in the fee schedule of their respective Network Provider Contracts in exchange for the Network Providers agreeing, in their Network Provider Contracts, to become obligated to treat Network Patients and accept for that treatment the discounted rates set forth in the fee schedule of their respective Network Provider Contracts.

158.    Network Providers, including QualiCenters Salem, agreed in their Network Provider Contracts to treat and not bill Network Patients in exchange for Network Payors agreeing in their Network Payor Contracts to pay the negotiated, discounted rates set forth in the fee schedule of the Network Provider Contracts.

159.    Pursuant to the Payor Contract, Shasta agreed to comply with all terms and conditions of QualiCenters Salem's Provider Contract that are applicable to Payors such as Shasta, including the obligation to pay QualiCenters Salem at the Network Rates set forth in Schedule B of the Provider Contract.

160.    Pursuant to the Provider Contract, First Choice agreed to bind Network Payors, including Shasta, to the terms of the applicable Network Provider Contracts.

161.    Pursuant to the Provider Contract, QualiCenters Salem agreed to become obligated to treat patients that were members of health plans either administered or operated by Network Payors, including Shasta, as reflected in the First Choice name or logo appearing on the patient's insurance identification card or in a list of Network Payors maintained on First Choice's website.

162.    Pursuant to the Payor Contract, Shasta was obligated to distribute to its members insurance identification cards to be presented to Network Providers that must prominently display the First Choice Network name and/or logo.

PAGE 29 – COMPLAINT

**LANE POWELL PC**
601 S.W. SECOND AVENUE,
SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

124492.0034/8368157.4

163.    Pursuant to the Provider Contract, First Choice was obligated to maintain and periodically update on its website a list of Network Payors, including Shasta, that could be accessed by Network Providers, including QualiCenters Salem.

164.    Pursuant to the Payor Contract, First Choice agreed to provide Shasta with QualiCenters Salem's re-pricing information in order for Shasta to re-price and pay QualiCenters Salem's claims in accordance with the Network Rates as set forth in the Provider Contract.

165.    Pursuant to the Provider Contract, QualiCenters Salem agreed to accept payment from Shasta for the treatment of Patient X at the discounted rates in the fee schedule to QualiCenters Salem's Provider Contract and not to bill or otherwise seek any portion of the Network Rates from the patient, except for any applicable copayments, coinsurance or deductibles.

166.    Pursuant to the Provider Contract, First Choice was obligated to require Shasta to pay QualiCenters Salem at the Network Rates set forth in the fee schedule to the Provider Contract.

167.    Pursuant to the Payor Contract, Shasta was obligated to provide First Choice with periodic reports of the allowed amounts it was paying to QualiCenters Salem.  Further, Shasta was obligated to provide First Choice with rights to audit Shasta's records to ensure that Shasta was paying QualiCenters Salem at the appropriate and accurate Network Rates.

168.    Pursuant to the Provider Contract, QualiCenters Salem was required to directly submit its claims for payment for its services to Patient X to Shasta.

169.    Pursuant to the Payor Contract, Shasta was obligated to pay QualiCenters Salem within 30 days of receipt of its reimbursement claims.

170.    Pursuant to the Provider Contract, First Choice was obligated to assist QualiCenters Salem in enforcing the Provider Contract against a delinquent Network Payor and to assist QualiCenters Salem in collecting amounts due from a Network Payor.

PAGE 30 – COMPLAINT

**LANE POWELL PC**
601 S.W. SECOND AVENUE,
SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

171.    Pursuant to the Payor Contract, Shasta was required to promptly notify First Choice of Shasta's inability to meet its payment obligations to contracted providers, like QualiCenters Salem.

172.    Pursuant to the Provider Contract, First Choice set forth a dispute resolution procedure for the resolution of payment disputes between QualiCenters Salem and Network Payors, including Shasta.  Provider Contract, ¶ 9.1.  If informal dispute resolution is unsuccessful, First Choice specifically agreed that QualiCenters Salem can resolve its payment dispute with Shasta by filing a lawsuit in any court of competent jurisdiction.

173.    The Payor Contract gives Shasta rights and requires Shasta to assume a number of direct obligations to QualiCenters Salem, including the obligation to reimburse QualiCenters Salem at the rates set forth in Provider contracts for the services it provided to Network Patients, including Patient X.

174.    The Provider Contract gives QualiCenters Salem rights and requires QualiCenters Salem to assume a number of direct obligations to Network Payors, including the obligation to treat members in plans they operate and administer and to accept payment at the Network Rates and not to bill or seek compensation from the patient for any portion of the Network Rates, except for any applicable copayments, coinsurance or deductibles.

175.    It is manifest from the terms of the Provider Contract and Payor Contract that First Choice, Shasta and QualiCenters Salem objectively intended that a Network Agreement was formed by the Provider Contract and the Payor Contract read together.  Pursuant to the Provider Contract, First Choice specifically "represents and warrants that it has the contractual ability to bind the Payors to *the terms of this [Provider] Agreement* (as applicable thereto) and to cause them to be responsible for their resulting obligations *hereunder*. . .  In the case of any Payor that becomes delinquent in its payment obligations *to [QualiCenters Salem]*, [First Choice] agrees to use its best efforts to assist [QualiCenters Salem] in enforcing *this Agreement* as applicable to

PAGE 31 – COMPLAINT

**LANE POWELL PC**
601 S.W. SECOND AVENUE,
SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

124492.0034/8368157.4

particular Payors by virtue of any applicable agreement between [First Choice] and such delinquent Payor."  Provider Contract, at ¶ 4.2.4 (emphasis added).

176.    Where a Network Payor such as Shasta breaches the payment terms of the Network Agreement, First Choice, Shasta and QualiCenters Salem mutually agreed that QualiCenters Salem may enforce those terms against Shasta.  The Provider Contract expressly sets forth the terms for the resolution of such disputes – under the Provider Contract – between QualiCenters Salem and a delinquent Network Payor such as Shasta.  *Id.* ¶ 9.2  ("Disputes between [QualiCenters Salem] and Payor regarding performance ***under this Agreement*** shall be resolved, to the extent possible, by informal meetings and discussions between both parties . . .  "In the event the parties cannot resolve the matter through the informal or formal process, either party may pursue judicial remedy in a court of competent jurisdiction.") (emphasis added).

177.    From on or about July 2019 to present, QualiCenters Salem has provided outpatient dialysis and related services to Patient X, as required by the Network Agreement.

178.    Pursuant to the terms of the Network Agreement, Shasta agreed to reimburse QualiCenters Salem for its treatment of Patient X at the Network Rates set forth in Schedule B of the Provider Contract.

179.    By all of its actions, including accepting Patient X as a patient, providing Patient X with outpatient dialysis services, and submitting its claims for payment to Shasta, QualiCenters Salem has performed all its obligations under the Network Agreement regarding its treatment of Patient X.

180.    Shasta materially breached the terms of the Network Agreement, as set forth above, including but not limited to:  (1) its failure and refusal to reimburse QualiCenters Salem for treatment of Patient X at the Network Rates; (2) its failure and refusal to re-process QualiCenters Salem's claims for treatment of Patient X to pay QualiCenters Salem at the Network Rates, despite numerous requests; (3) its use of Renalogic to re-price QualiCenters Salem's claims, on a claim

PAGE 32 – COMPLAINT

124492.0034/8368157.4

by claim basis, at Renalogic's so-called "U&R" rates; and (4) its production of EOBs that do not reference the First Choice name and/or logo and do not determine the "allowed amount in accordance with [the Network] fee schedules."

181.   First Choice materially breached the Network Agreement, as set forth above, including but not limited to by: (1) failing and refusing to require Shasta to reimburse QualiCenters Salem for its services to Patient X at the Network Rates; (2) failing to "ensure" that Shasta re-priced QualiCenters Salem's claims for payment pursuant to the Provider Contract; (3) failing and refusing to ensure that Shasta produced EOBs referencing First Choice and determining the allowed amount at the Network Rates; (4) failing and refusing to assist QualiCenters Salem in enforcing Shasta's obligations under the Provider Contract; (5) failing and refusing to assist QualiCenters Salem in collecting payments due and owing from Shasta; and (6) failing and refusing to exercise its promised contractual authority to cause Shasta to be responsible for its obligations under the Provider Contract, or alternatively, by failing and refusing to contractually bind Shasta to the terms of the Provider Contract, as promised.

182.   As a result of Shasta and First Choice's breaches of the Network Agreement, QualiCenters Salem has been harmed, has not received the benefit of its bargain, and has suffered substantial damages in amounts of approximately $1.5 million as of July 2020.  QualiCenters Salem's damages have continued to accrue since July 2020 and continue to accrue as of the date of the filing of this Complaint.

## X.   SIXTH CAUSE OF ACTION

### (Breach of Implied-In-Fact Contract Against Shasta)

183.   QualiCenters Salem realleges paragraphs 1 through 182 and incorporates them herein as if set forth in full, and further alleges as follows:

184.   In the alternative, if no enforceable express contract were found to exist between QualiCenters Salem and Shasta, all of the facts and circumstances set forth above – including the

PAGE 33 – COMPLAINT

LANE POWELL PC
601 S.W. SECOND AVENUE,
SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

124492.0034/8368157.4

promises made by Shasta and the terms of the Provider Contract and Payor Contract – compel the conclusion that Shasta and QualiCenters Salem had a mutual, binding understanding that QualiCenters Salem was contractually obligated to provide dialysis services to Patient X in exchange for payment by Shasta at the Network Rates.

185.    At all relevant times, QualiCenters Salem was a Network Provider, and Shasta was a Network Payor.

186.    QualiCenters Salem agreed, by entering the Provider Contract and joining the Network, to provide dialysis services to Patient X and all other Network Patients.  QualiCenters Salem further agreed to accept the Network Rates from Shasta and all other Network Payors for the services it provided to Patient X and all other Network Patients, and not to bill or seek compensation from those patients for any portion of the Network Rates, except for any applicable copayments, coinsurance or deductibles.

187.    By virtue of the Payor Contract, Shasta intended to secure the benefits of First Choice's contracts with the Network Providers such as QualiCenters Salem.

188.    In exchange for such benefits, Shasta agreed to be responsible for compliance with all terms and conditions of QualiCenters Salem's Provider Contract that are applicable to Payors such as Shasta, including the obligation to pay QualiCenters Salem at the Network Rates set forth in Schedule B of the Provider Contract.

189.    Upon information and belief, at all material times, Shasta knew that QualiCenters Salem was a Network Provider, and that QualiCenters Salem was required to treat any patient that was a member of a health plan operated or administered by Shasta and that presented to QualiCenters Salem with an insurance card that featured the First Choice name and/or logo or that otherwise was established to be a Network Patient.

190.    Patient X was a Network Patient, covered under a health plan administered by Shasta.  Shasta issued an insurance membership card, which featured the First Choice name and/or

PAGE 34 – COMPLAINT

**LANE POWELL PC**
601 S.W. SECOND AVENUE,
SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

124492.0034/8368157.4

logo, to Patient X.  Upon information and belief, Shasta was also, at all relevant times, identified as a Network Payor on First Choice's website.

191.    Patient X presented the insurance membership card featuring the First Choice name and/or logo to QualiCenters Salem which obligated QualiCenters Salem, under the Provider Contract, to treat him.

192.    Shasta also explicitly represented to QualiCenters Salem, when QualiCenters Salem contacted Shasta to verify Patient X's insurance coverage and network status prior to providing treatments to Patient X, that Patient X's health plan covered outpatient dialysis treatments and that First Choice was the "Network Used."

193.    QualiCenters Salem understood that it had a binding agreement to treat Patient X in exchange for payment by Shasta at the Network Rates, and Shasta understood that it had a binding agreement to pay QualiCenters Salem at the Network Rates in exchange for QualiCenters Salem's services to Patient X.

194.    Patient X in fact sought treatment from a First Choice Network Provider, QualiCenters Salem, consistent with the agreement described above.

195.    QualiCenters Salem in fact accepted Patient X as a patient and began treating Patient X on or about July 2019, and continues to treat Patient X to the present day, consistent with the agreement described above.

196.    QualiCenters Salem in fact issued its claims for payment directly to Shasta, consistent with the agreement described above.

197.    Upon information and belief, First Choice re-priced each one of QualiCenters Salem's claims at the Network Rates and provided that re-pricing to Shasta, consistent with the agreement described above.

198.    Shasta accepted QualiCenters Salem's performance, consistent with the agreement described above.

PAGE 35 – COMPLAINT

**LANE POWELL PC**
601 S.W. SECOND AVENUE,
SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

124492.0034/8368157.4

199.    Shasta issued payment directly to QualiCenters Salem for its treatment of Patient X, consistent with the agreement described above, albeit not at the Network Rates.

200.    If no enforceable express contract were found to exist between QualiCenters Salem and Shasta, the parties' acts and conduct, considered in their totality, evidence their mutual intention to enter a contract whereby QualiCenters Salem would provide services to Patient X and Shasta would reimburse QualiCenters Salem for its services at the Network Rates.

201.    The parties' acts and conduct gave rise to a valid and enforceable implied-in-fact contract between QualiCenters Salem and Shasta.

202.    QualiCenters Salem performed its obligations to Shasta under the implied-in-fact contract by providing outpatient renal dialysis and related services to Patient X and not billing Patient X or seeking compensation from Patient X for any portion of the Network Rates, except for any applicable copayments, coinsurance and deductibles.

203.    Shasta breached its implied-in-fact contract with QualiCenters Salem by accepting QualiCenters Salem's performance, but then failing to properly reimburse QualiCenters Salem for the services it provided to Patient X at the Network Rates.

204.    As a result of Shasta's breach of its implied contract with QualiCenters Salem, QualiCenters Salem has been harmed, has not received the benefit of its bargain, and has already suffered substantial damages in the amount of approximately $1.5 million as of July 2020. QualiCenters Salem's damages have continued to accrue since July 2020 and continue to accrue as of the date of the filing of this Complaint.

## XI.    SEVENTH CAUSE OF ACTION

### (Fraudulent Inducement Against First Choice)

205.    QualiCenters Salem realleges paragraphs 1 through 204 and incorporates them herein as if set forth in full, and further alleges as follows:

PAGE 36 – COMPLAINT

**LANE POWELL PC**
601 S.W. SECOND AVENUE,
SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

124492.0034/8368157.4

206.    In the alternative, if no enforceable express contract were found to exist between QualiCenters Salem and Shasta, all of the facts and circumstances set forth above – including the promises made by First Choice and the terms of the Provider Contract and Payor Contract – compel the conclusion that First Choice is liable to QualiCenters Salem for fraudulent inducement in connection with the Provider Contract.

207.    First Choice, in paragraph 4.2 of the Provider Contract explicitly "represents and warrants" to QualiCenters Salem that First Choice "has the contractual ability to bind the Payors to the terms of this Agreement (as applicable thereto) and to cause them to be responsible for their resulting obligations hereunder."

208.    First Choice further expressly represented that, "In the case of any Payor that becomes delinquent in its payment obligations *to [QualiCenters Salem]*, [First Choice] agrees to use its best efforts to assist [QualiCenters Salem] in enforcing *this Agreement* as applicable to particular Payors by virtue of any applicable agreement between [First Choice] and such delinquent Payor."

209.    First Choice's representation that it "has the contractual ability to bind the Payors" to the terms of the Provider Contract was material to QualiCenters Salem's decision to enter into the Provider Contract.

210.    In the event that no enforceable express contract were found to exist between QualiCenters Salem and Shasta and First Choice is found not to have bound Shasta to the terms of the Provider Contract, First Choice's representation in the Provider Contract that it "has the contractual ability to bind the Payors to the terms of [the Provider Contract]" will necessarily be false.

211.    First Choice's representation in the Provider Contract that it "has the contractual ability to bind the Payors to the terms of [the Provider Contract]" was intended to induce providers,

PAGE 37 – COMPLAINT

**LANE POWELL PC**
601 S.W. SECOND AVENUE,
SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

124492.0034/8368157.4

such as QualiCenters Salem, to enter into Provider Contracts.  And First Choice's representations did so induce QualiCenters Salem to enter into the Provider Contract with First Choice.

212.    By virtue of the Provider Contract, QualiCenters Salem agreed to treat and not bill Network Patients for any portion of the Network Rates in exchange for Network Payors agreeing in their Network Payor Contracts to pay the negotiated, discounted rates set forth in the fee schedule of the Network Provider Contracts.

213.    By virtue of the Provider Contract, QualiCenters Salem intended to secure the benefits of First Choice's Payor contracts with Network Payors such as Shasta.

214.    QualiCenters Salem relied on First Choice's representation in the Provider Contract that it "has the contractual ability to bind the Payors to the terms of [the Provider Contract]".

215.    In the event that no enforceable express contract were found to exist between QualiCenters Salem and Shasta, and First Choice is found not to have bound Shasta to the terms of the Provider Contract, QualiCenters Salem, in the alternative, will have been fraudulently induced by First Choice to enter into the Provider Contract and will have been harmed by First Choice's fraudulent inducement in connection with the Provider Contract.  QualiCenters Salem has not received the benefit of its bargain and has suffered substantial damages in amounts of approximately $1.5 million as of July 2020.  QualiCenters Salem's damages have continued to accrue since July 2020 and continue to accrue as of the date of the filing of this Complaint.

## XII.    EIGHTH CAUSE OF ACTION

### (Fraud Against Shasta)

216.    QualiCenters Salem realleges paragraphs 1 through 215 and incorporates them herein as if set forth in full, and further alleges as follows:

217.    Shasta issued an insurance identification card to Patient X bearing the First Choice name and/or logo, knowing that QualiCenters Salem and other Network Providers would rely on that card in determining whether to treat Shasta patients.

PAGE 38 – COMPLAINT

**LANE POWELL PC**
601 S.W. SECOND AVENUE,
SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

124492.0034/8368157.4

218.    Prior to providing outpatient dialysis treatments to Patient X, on July 3, 2019, QualiCenters Salem contacted Shasta regarding Patient X's network status and insurance coverage.  A Shasta insurance representative named "Melissa A" confirmed that First Choice was the "Network Used" and that Patient X's health plan covered outpatient dialysis treatments.

219.    During that call, the Shasta insurance representative, "Melissa A," explicitly represented that the Provider Contract controlled and that Shasta was the "payor at risk."

220.    Shasta understood that the sole purpose of this call in particular, and such calls in general, is for the provider, prior to accepting the patient for treatment, to verify coverage for the services it would provide to the patient under the patient's applicable health plan and the applicable network that will determine the rate at which the provider would be reimbursed.

221.    As such, Shasta intended for QualiCenters Salem to rely on Shasta's representations in that call and knew that QualiCenters Salem would do so.

222.    After Patient X began treating, QualiCenters Salem *again* contacted Shasta on October 21, 2019 concerning Patient X's insurance coverage.  A Shasta insurance representative named "Kaity" *again* confirmed that First Choice was the "Network Used" and that Patient X's health plan covered outpatient dialysis treatments.

223.    At the time it made the representations, Shasta knew that the representations were false and that Shasta did not intend to pay QualiCenters Salem at the Network Rates for the treatment of Patient X.  In fact, Shasta knew that it would instead use Renalogic to re-price QualiCenters Salem's claims and pay QualiCenters Salem at rates far below the Network Rates.

224.    As Shasta knew they would be, its false representations to QualiCenters Salem were material to its decision to accept Patient X for treatment.

225.    Having no reason to believe that Shasta's representations were false, and based on the First Choice name and/or logo on Patient X's insurance card and the explicit representations made by "Melissa A" on behalf of Shasta, QualiCenters Salem relied on the truth of those

PAGE 39 – COMPLAINT

LANE POWELL PC
601 S.W. SECOND AVENUE,
SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

124492.0034/8368157.4

representations and accepted Patient X as a patient and began providing outpatient dialysis treatments to Patient X on or about July 9, 2019.

226.    Shasta intended that its false representations would be acted on by QualiCenters Salem in agreeing to accept the patient, and Shasta reasonably contemplated that QualiCenters Salem would accept Patient X as a result of the fraudulent representations.

227.    Shasta also knew that QualiCenters Salem would rely on Shasta's compliance with its First Choice Payor Contract.  Yet, on February 2, 2018 – well before QualiCenters Salem contacted Shasta to confirm the application of the First Choice network and Patient X's insurance coverage of outpatient dialysis services – First Choice sent an e-mail to Shasta specifically advising Shasta that First Choice's Network Provider Contracts did not allow for the use of "alternative dialysis solutions," including those like Renalogic.

228.    Nevertheless, more than 18 months after being advised that the use of such "alternative dialysis solutions" violated the First Choice Network Provider Contracts, Shasta paid QualiCenters Salem's claims for reimbursement at Renalogic's so-called "U&R" rates and did not pay at the Network Rates, as Shasta had represented to QualiCenters Salem prior to it accepting Patient X as a patient.

229.    As a result of Shasta's fraud, QualiCenters Salem has been harmed and has already suffered substantial damages in the amount of approximately $1.5 million as of July 2020. QualiCenters Salem's damages have continued to accrue since July 2020 and continue to accrue as of the date of the filing of this Complaint.

### XIII.   NINTH CAUSE OF ACTION

### (Specific Performance Against First Choice)

230.    QualiCenters Salem realleges paragraphs 1 through 229 and incorporates them herein as if set forth in full, and further alleges as follows:

PAGE 40 – COMPLAINT

124492.0034/8368157.4

231.    First Choice and QualiCenters Salem are parties to the Provider Contract and to the Network Agreement.  Those contracts are valid and enforceable.

232.    QualiCenters Salem fully performed all of its obligations under the Provider Contract and the Network Agreement.

233.    First Choice has materially breached the Provider Contract and the Network Agreement, as set forth above, including but not limited to by: (1) failing and refusing to require Shasta to reimburse QualiCenters Salem for its services to Patient X at the Network Rates; (2) failing to "ensure" that Shasta re-priced QualiCenters Salem's claims for payment pursuant to the Network Rates; (3) failing and refusing to ensure that Shasta produced EOBs referencing First Choice and determining the allowed amount at the Network Rates; (4) failing and refusing to assist QualiCenters Salem in enforcing Shasta's obligations under the Provider Contract and the Network Agreement; (5) failing and refusing to assist QualiCenters Salem in collecting payments due and owing from Shasta; and (6) failing and refusing to exercise its promised contractual authority to cause Shasta to be responsible for its obligations under the Provider Contract and Network Agreement.

234.    First Choice's breaches of contract caused QualiCenters Salem to suffer damages. However, to the extent that QualiCenters Salem is found not to have an adequate remedy at law to recover its damages for First Choice's breaches of contract, QualiCenters Salem demands, in the alternative, the equitable remedy of specific performance of First Choice's contractual promise that it "shall require" Shasta to reimburse QualiCenters Salem at the Network Rates for the services QualiCenters Salem provided to Patient X and to assist QualiCenters Salem in enforcing Shasta's obligations to pay the Network Rates.

235.    Granting specific performance in this case would do equity under the circumstances.  For the reasons set forth above, QualiCenters Salem will suffer an injustice if First Choice is permitted to disregard its contractual obligations to require Shasta to pay QualiCenters

PAGE 41 – COMPLAINT

124492.0034/8368157.4

Salem the Network Rates that Shasta agreed to pay and to assist Shasta in enforcing that obligation, after QualiCenters Salem already fulfilled its contractual obligations by accepting Patient X as a patient, providing dialysis services, billing Shasta for those services, and not billing Patient X for the portion of the Network Rates not paid by Shasta. Granting specific performance would not be oppressive, unconscionable, or result in undue hardship.

## XIV.   TENTH CAUSE OF ACTION

### (Declaratory Judgment Against First Choice and Shasta)

236.   QualiCenters Salem re-alleges paragraphs 1 through 235 and incorporates them herein as if set forth in full, and further alleges as follows:

237.   As set forth above, an actual controversy has arisen and now exists between QualiCenters Salem, First Choice, and Shasta concerning First Choice and Shasta's contractual and legal obligations based on the circumstances set forth above and, inter alia, the Payor Contract, the Provider Contract, and the Network Agreement. QualiCenters Salem contends that, pursuant to their contractual and legal obligations, Shasta is required to reimburse QualiCenters Salem at the Network Rates for the services it provided and continues to provide to Patient X and First Choice must require Shasta to do so. Shasta and First Choice contend that Shasta may reimburse QualiCenters Salem for services provided to Patient X at rates as low as 7% of the Network Rates, notwithstanding Shasta and First Choice's legal and contractual obligations, including based on the terms of the Payor Contract, the Provider Contract, and the Network Agreement.

238.   As Patient X continues to treat with QualiCenters Salem, a judicial determination is necessary and appropriate under the circumstances in order for QualiCenters Salem, Shasta, and First Choice to ascertain their respective contractual and legal rights and obligations. A judicial declaration will inform the parties' future conduct and will lessen the financial burden on

**LANE POWELL PC**
601 S.W. SECOND AVENUE,
SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

124492.0034/8368157.4

QualiCenters Salem as a result of Shasta and First Choice's refusal to honor their contractual and legal obligations.

239.    While this controversy persists, QualiCenters Salem will continue to suffer injuries as a result of Shasta and First Choice's breach of their contractual and legal obligations. Consequently, unless and until this Court enters a declaration that (i) Shasta is required to reimburse QualiCenters Salem for services provided to Patient X at the Network Rates, and (ii) First Choice must require Shasta to do so pursuant to the Payor Contract or pay QualiCenters Salem damages for First Choice's failure to do so, QualiCenters Salem's damages will only continue to accrue.  The Court, by entering a declaration as to the rights of the parties, would finally and conclusively terminate the uncertainty and controversy giving rise to the allegations set forth herein.

## XV.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff QualiCenters Salem prays that this Court:

A.    Enter judgment in favor of Plaintiff QualiCenters Salem and against Shasta on Claim I (Breach of Contract as Third-Party Beneficiary of Payor Contract), Claim III (Breach of Implied Covenant of Good Faith and Fair Dealing), Claim IV (Breach of Contract - Promissory Estoppel), Claim V (Breach of Network Agreement), Claim VI (Breach of Implied-In-Fact Contract), Claim VIII (Fraud), and Claim X (Declaratory Judgment) and award damages to QualiCenters Salem in an amount equal to the difference between: (a) the amount Shasta has already reimbursed QualiCenters Salem for the services it provided to Patient X, and (b) the Network Rates set forth in Schedule B of the Provider Contract for those services;

B.    Enter judgment in favor of Plaintiff QualiCenters Salem and against First Choice on Claim II (Breach of Provider Contract), Claim III (Breach of Implied Covenant of Good Faith and Fair Dealing), Claim IV (Breach of Contract - Promissory Estoppel), Claim V (Breach of Network Agreement), Claim VII (Fraudulent Inducement), Claim IX (Specific Performance), and

PAGE 43 – COMPLAINT

**LANE POWELL PC**
601 S.W. SECOND AVENUE,
SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

124492.0034/8368157.4

Claim X (Declaratory Judgment) and award damages to QualiCenters Salem in an amount equal to the difference between: (a) the amount Shasta has already reimbursed QualiCenters Salem for the services it provided to Patient X, and (b) the Network Rates set forth in Schedule B of the Provider Contract for those services;

C.      As an alternative equitable remedy in conjunction with judgment for QualiCenters Salem and against First Choice on Claims II, III, IV, V and IX, award QualiCenters Salem specific performance of First Choice's contractual promise that it "shall require" Shasta to reimburse QualiCenters Salem at the Network Rates for the services QualiCenters Salem provided to Patient X;

D.      Issue a judicial declaration regarding QualiCenters Salem, Shasta, and First Choice's contractual, legal, and equitable rights and obligations pursuant to the common law, Payor Contract, Provider Contract, and the Network Agreement, specifically finding that (i) Shasta is required to reimburse QualiCenters Salem for services provided to Patient X pursuant to the Provider Contract at the Network Rates set forth in Schedule B of the Provider Contract, and (ii) First Choice must require Shasta to do so pursuant to the Payor Contract or pay QualiCenters Salem damages for First Choice's failure to do so;

E.      Award QualiCenters Salem its reasonable attorney's fees and litigation costs, as well as appropriate interest on its damages; and

F.      Provide to QualiCenters Salem all other relief that this Court deems just and proper.

PAGE 44 – COMPLAINT

**LANE POWELL PC**
601 S.W. SECOND AVENUE,
SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

124492.0034/8368157.4

## XVI.   JURY DEMAND

QualiCenters Salem demands a jury trial on all claims, issues, and facts so triable.


DATED:   February 25, 2021


                                        LANE POWELL PC


                        By:    s/ Carin A. Marney
                               Carin A. Marney, OSB No. 131945
                               Telephone:  503.778.2100
                               Attorneys for Plaintiff


PAGE 45 – COMPLAINT

**LANE POWELL PC**
601 S.W. SECOND AVENUE,
SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

124492.0034/8368157.4