IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

QUALICENTERS SALEM, LLC D/B/A                         Case No. 3:21-cv-295-JR
QCI SALEM,

       Plaintiff,                                                              ORDER

   v.

SHASTA ADMINISTRATIVE SERVICES, INC.
and FIRST CHOICE HEALTH NETWORK, INC.,

       Defendants.
_____

RUSSO, Magistrate Judge:

     Plaintiff QualiCenters Salem is a provider of dialysis treatment to patients with end stage

renal disease and/or chronic kidney disease.  Patient X began receiving regular outpatient renal

dialysis treatments from QualiCenters in July 2019.  Patient X provided information indicating

coverage under an insurance plan administered by defendant Shasta Administrative Services

(Shasta). Shasta and QualiCenters Salem entered into contracts in which QualiCenters agreed to

participate in a preferred provider organization which obligates it to accept Patient X and provide

outpatient renal dialysis treatment and related services and obligated Shasta to pay for such

services in accordance with the health plan it administered and the network provider agreement.

Page 1 – ORDER

Defendant First Choice Health Network (First Choice) operates the healthcare preferred provider organization network.

Plaintiff alleges defendants Shasta and First Choice have regularly failed and refused to fulfill their contractual obligations to pay plaintiff at the network rates for the treatment of Patient X. Accordingly, plaintiff brings this action seeking approximately $1.5 million for past billing and payments for services it continues to provide to Patient X. Plaintiff specifically alleges claims for: (1) breach of contract as a third-party beneficiary of the payor contract against defendant Shasta; (2) breach of the provider contract against defendant First Choice; (3) breach of the implied covenant of good faith and fair dealing against both defendants; (4) promissory estoppel against both defendants; (5) breach of network agreement against both defendants; (6) breach of implied-in-fact contract against defendant Shasta; (7) fraud in the inducement against defendant First Choice; (8) fraud against defendant Shasta; (9) specific performance against defendant First Choice; and (10) declaratory judgment against both defendants.

Defendant Shasta seeks summary judgment as to all claims against it asserting it is a payor of last resort and plaintiff failed to bill Medicare before attempting to collect from Shasta. Plaintiff moves to continue briefing on the summary judgment motion so that it may seek discovery in order to respond to the motion. Defendant Shasta on the other hand moves to stay discovery pending resolution of the summary judgment motion. For the reasons stated below, the motion to continue briefing is granted to allow plaintiff to conduct further discovery in order to adequately respond to the motion for summary judgment.

BACKGROUND

Defendant Shasta is the third-party administrator of health insurance plans for Indian tribes and tribal businesses. The Confederated Tribes of the Grand Ronde Community of Oregon is the

majority owner of Shasta. Shasta administers health programs operated by the Tribe for members and employees including the Confederated Tribes of Grand Ronde Employee Health Plan (Plan). The Plan covers both tribal and non-tribal members.

Patient X was an employee of a tribal enterprise and received healthcare through the Plan. As noted above, he received dialysis treatment for end-stage renal disease from plaintiff QualiCenters beginning in July 2019.

Defendant Shasta, in its motion for summary judgment, asserts patients receiving end-stage renal dialysis are eligible for Medicare coverage for those services even if under the age of 65. Shasta contends that even though such patients are eligible for Medicare, the Medicare Secondary Payer Act (MSPA) generally requires that employer plans pay as the primary insurer for the first 33 months of treatment, but that under 25 U.S.C. § 1623, plans operated by tribal organizations shall be the payor of last resort notwithstanding the MSPA.

Defendant Shasta asserts the Plan includes a coordination of benefits summary and explains that the MSPA may make Medicare the Secondary Payer in some circumstances but does not actually mandate precisely when or how the MSPA applies to specific circumstances. Thus, Shasta contends, the Plan administrator must coordinate benefits when a claim is received in order to determine who is the primary payer and who is the secondary payer. Regardless of Medicare's primary or secondary status, Shasta contends the Plan limits coverage to the Medicare amounts or, if the provider has not accepted Medicare coverage, to no more than 115% of the Medicare approved amount.

In addition, defendant Shasta argues where the Plan is a secondary payer, it will not pay for any expenses that should have been paid under Medicare regardless of whether the Plan participant actually enrolled in Medicare so long as he is eligible. Accordingly, Shasta asserts it

has the right to recover any overpayments to providers that result from errors in the coordination of benefits such as paying as a primary insurer when it was later determined it was the secondary insurer.

In addition, defendant Shasta contends that as of January 1, 2020, the Plan limited outpatient dialysis benefits to the "usual and reasonable charge after all applicable deductibles and coinsurance."

Defendant Shasta argues that Patient X was and remains eligible for Medicare due to his end stage renal disease and was in fact enrolled in Medicare, paying the required premium, from October 1, 2019 to January 31, 2020, when coverage terminated for unknown reasons.

Defendants Shasta asserts it processed claims submitted by QualiCenters for Patient X's treatment remitting payment from tribal funds at the rates provided by the Plan based on the information forwarded by QualiCenters. However, Shasta argues QualiCenters was not satisfied with the payments and submitted letters contesting the purportedly insufficient payments. In investigating the matter, Shasta contends it learned that Medicare recognized the Plan as payer of last resort even for services to non-Indian beneficiaries when it had previously thought Medicare would not acknowledge primary status under the MSPA. When initially making the payments, Shasta asserts that challenging Medicare's position as a secondary payer would not have been an economical benefit to the Plan in light of the administrative and legal expense. But with its new understanding, based on 25 U.S.C. § 1623, it would have denied QualiCenters claims because QualiCenters is a participating provider in the Medicare program and refuses to bill Medicare for Patient X's treatment.

In this proceeding, defendant Shasta asserts its status as a payor of last resort precludes all of plaintiff's claims. Specifically, Shasta claims QualiCenters violated 25 U.S.C. § 1623(b) by

failing to bill Medicare and attempting to collect from Shasta.  Additionally, Shasta contends even if Patient X is not enrolled in Medicare, it still qualifies as a payer of last resort, negating its responsibility for payment, so long as Patient X is "eligible" for Medicare coverage.  Moreover, Shasta claims the Plan expressly limits benefits for kidney dialysis when not reimbursed by Medicare, anticipates errors in coordination of benefits may be made, and provides a mechanism for recovery of payments when benefits are erroneously provided under the assumption that Medicare would not pay, thus defeating any claims of estoppel.

Plaintiff asks the Court to deny the summary judgment motion without prejudice or to continue briefing on the motion until: (1) completion of Shasta's depositions on QualiCenters' claims for breach of contract, fraud, promissory estoppel, and estoppel based on Shasta's conduct from asserting the issue raised in its motion, as well as Shasta's claimed "mistake of fact" defense to the breach of contract claim; (2) specific discovery on the subject matter of the motion itself; and (3) any additional discovery the District Court may order based on the pending appeal of the Magistrate Judge's discovery ruling.[1]  Defendant Shasta seeks an order staying discovery pending resolution of the summary judgment motion.

## DISCUSSION

Plaintiff asserts Shasta failed to pay for Patient X's treatment at the contractually agreed upon rates with defendant First Choice.  Shasta contends Confederated Tribes of Grand Ronde is not a party to the First Choice contracts nor is it involved in the alleged false representations made by Shasta.

---

[1] On December 2, 2021, the District Court adopted this Court's August 25, 2021 ruling regarding the scope of discovery and the need to further meet and confer regarding discovery disputes.

Defendant Shasta contracted with defendant First Choice to obtain access to in-network healthcare services for members of health plans it administers at certain agreed upon rates. Plaintiff QualiCenters contracted with First Choice to be an in-network provider in exchange for payment at those rates. QualiCenters notes that Patient X is not a Tribe member or of Indian descent and was employed by Spirit Mountain Casino, which is owned by the Tribe, and received health insurance through the Tribe's Employee Health Plan.

Plaintiff QualiCenters asserts when seeking treatment, Patient X presented his insurance card, issued by defendant Shasta, indicating First Choice as the applicable network. As such, QualiCenters states it called Shasta before providing treatment to verify Patient X's in-network status with First Choice and agreed it would reimburse at the network rates. QualiCenters subsequently treated Patient X, but asserts Shasta refused to reimburse it at the First Choice rates instead paying approximately 10% of that rate.

Plaintiff QualiCenters asserts that Shasta apparently contracted with Renalogic, Inc., a "dialysis containment" company to insert language into Patient X's health plan that limits the Plan's payment for dialysis. QualiCenters contends Shasta did not assert the Plan was a payer of last resort and used funds from the Plan to pay QualiCenters and continues to do so at the rate of approximately 10% of the First Choice contracted rate.[2]

Plaintiff QualiCenters asserts the First Choice contract requires all payers to reimburse it at 75% of its full billed charges less any applicable copays, coinsurance, or deductibles. QualiCenters further asserts Shasta's network contract with First Choice also provides that it pay

---

[2] QualiCenters filed this action on February 25, 2021. It states defendant Shasta first asserted that Shasta is a payer of last resort on March 19, 2021 in response to the complaint and had been so since 2010 pursuant to an amendment to the Indian Health Care Improvement Act.

network providers like QualiCenters at the 75% rate.  Moreover, QualiCenters contends that Shasta

was specifically put on notice on February 18, 2018, that pricing network provider claims using

alternative dialysis solutions like Renalogic violated the First Choice Network contracts.

In its answer, defendant Shasta alleges, in support of its affirmative defense of mistake of

fact:

> Consistent with § 1623(b), the Centers for Medicare & Medicaid Services ("CMS") requires Medicare to be the primary payor for all participants in self-insured group health plans run by federally recognized Indian tribes. Because the Plan is run by the Confederated Tribes of Grand Ronde, Medicare should have been the primary payor for Patient X as soon as they became eligible for Medicare. Shasta reasonably believed that Plaintiff, as a Medicare-participating provider, would bill Medicare for Medicare members such as Patient X.  Shasta therefore did not see any need to investigate Patient X's Medicare coverage until this dispute arose. Shasta was not aware of CMS's position regarding tribal self-insured plans during either of its phone calls with Plaintiff's representatives in 2019.
>
> On information and belief, and as shown on CMS' published list of participating providers [footnote omitted], Plaintiff serves Medicare patients and accepts the Medicare amount (including the patient's portion) as payment in full for services to Medicare patients. Plaintiff would have accepted Patient X even if Plaintiff had correctly identified Medicare as the primary payor instead of improperly seeking payment from the Plan through Shasta. In this case, Plaintiff did not attempt to obtain payment from Medicare.
>
> Starting on the first day of the fourth month after Patient X's dialysis treatment began, Patient X was eligible for Medicare coverage.
>
> Patient X was enrolled in Medicare for portions of his treatment by Plaintiff. For the periods where Patient X was not enrolled in Medicare, Patient X is eligible for retroactive enrollment in Medicare. Patient X is currently enrolled in Medicare. CMS has confirmed that it is the primary payor for services provided to Patient X.
>
> Any agreement Shasta entered into with Plaintiff regarding payment of Plan benefits for Patient X's care relied on a mutual mistake of fact.

Answer (ECF 12) at ¶¶ 136-40.

As such, defendant Shasta also asserts a counterclaim of unjust enrichment and seeks recovery of any payments to QualiCenters in excess of Patient X's Medicare deductible and/or co-insurance payments and/or benefits to which Patient X was entitled under the Plan.

Plaintiff QualiCenters contends it is still in the process of obtaining discovery related to this counterclaim and defense. QualiCenters believes the discovery on the underlying claims for breach of contract, promissory estoppel, and fraud are also relevant to the merits of defendant Shasta's defense and counterclaim because Shasta had adjudicated all the reimbursement claims for Patient X based on Shasta's determination that the Plan was not a payer of last resort.

QualiCenters notes that in support of defendant Shasta's summary judgment motion, Shasta alleges it learned from Medicare in a December 2020 phone call that Medicare agreed that it was the primary payer to tribally operated health programs. QualiCenters asserts such evidence is hearsay and that it is contrary to a May 2021 email produced in discovery in which Shasta described a conversation with Medicare specifically regarding Patient X wherein Medicare determined that the Plan was primary until the close of the coordination of benefits period in March 2022. QualiCenters asserts discovery into this issue is ongoing and that the parties are continuing their obligation to meet and confer regarding discovery in general and specifically related to issues in the summary judgment motion.

A.    Continue Summary Judgment Motion to Complete Discovery

If the nonmoving party demonstrates that it cannot present facts essential to justify its opposition to summary judgment, the Court may deny the motion or defer considering it to allow time to take discovery. Fed. R. Civ. P. 56(d). The rule affords litigants an opportunity to defer a ruling on summary judgment when they have not had sufficient time to develop affirmative evidence. A party seeking additional discovery under Rule 56(d) must explain what further

discovery would reveal that is essential to justify opposition to summary judgment.  Program Eng'g, Inc. v. Triangle Publ'ns, Inc., 634 F.2d 1188, 1194 (9th Cir. 1980).  To defer the ruling, plaintiff QualiCenters must show: (1) the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment. Stevens v. Corelogic, Inc., 899 F.3d 666, 678 (9th Cir. 2018).

In its declarations in support of a continuance, QualiCenters identifies a wealth of factual matters into which it seeks discovery including: communications with government agencies charged with administering the statutes at issue in the summary judgment motion, documents Shasta relied on for its assertion that the Plan is secondary to Medicare and/or a payer of last resort; how the Plan is funded and how funding relates to the purpose of the MSPA and payer of last resort status statute; documents reflecting how Shasta administered and processed claims for treatment of covered patients eligible under the Plan and Medicare or Medicaid; profit and loss statements of the Tribe and Casino to identify whether Shasta's preferred interpretation of the statutes comports with Congressional intent; Shasta's Communications regarding application of section 1623(b) to tribally operated employee group health plans; documents related to Medicare's response to providers' attempts to bill Medicare as primary during the 30 month period in which the MSPA designates it as secondary; documents Shasta relied on for its new interpretation of the law and Congress' intent to shift Medicare to primary status vis-à-vis employee group health insurance plans for non-tribal members; summary plan descriptions of all other group health plans operated by the Tribe implicated by Shasta's new interpretation of the payer of last resort statute; a list of consultants and brokers with whom Shasta communicated regarding tribal healthcare matters; identity of any tribal boards, lobbyists, etc. of which Shasta is aware that have taken the position that Shasta now asserts; answers to whether Shasta promoted itself as an expert on tribal

healthcare matters in order to understand the ten-year wait to assert section 1623(b) to push it to a payer of last resort; and depositions of Shasta employees regarding the communications with Medicare.

Shasta does not assert the requested discovery does not exist. However, Shasta does contend the issue in this case is simply one of statutory construction and that the Court does not need any of the sought-after information to interpret the statute in Shasta's favor to preclude each and every claim made by QualiCenters.

When a summary judgment motion is filed early in the litigation, before a party has had a realistic opportunity to pursue discovery relating to its theory of the case, district courts should grant a Rule 56(d) motion fairly freely. Burlington N. Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation, 323 F.3d 767, 773 (9th Cir. 2003). To accept Shasta's assertion that the Court can simply interpret the statute in a virtual vacuum, especially in a case alleging fraud and estoppel and one in which the purported interpretation is newly asserted by the moving party despite the statute's existence for ten years, would be tantamount to deciding the merits of the summary judgment motion through the motion to continue. A party seeking to oppose summary judgment should be able to advance all reasonable theories as to why the Court should deny summary judgment without having to essentially accept the moving party's theory and work within those confines and from a position of ignorance regarding the moving party's knowledge and motives for its actions. It may very well be that the statute's effect is so plain, and the impact of the status of payer of last resort, purportedly ascribed to Shasta, so strong, that it precludes any claims of fraud and estoppel in addition to breach of contract. However, the more prudent analysis is to fully consider QualiCenters' theory of the case before application of the statute to the facts. This is especially true where Shasta relies on factual assertions for its preferred interpretation of

the statute such as telephone or written communications with Medicare that it has apparently refused to provide to plaintiff.  Moreover, it appears discovery may benefit the breach of contract claim regarding Shasta's status as a payer for healthcare benefits as an insurer, risk-based payer, or insurance plan for purposes of the First Choice contractual obligations.  Finally, the development of facts is necessary related to whether Patient X's participation in the Plan, as a non-tribal member employee of the Casino, demonstrates whether the Plan should be treated as ordinary health insurance and thus negating any coordination of benefits assertions raised by Shasta.  Accordingly, plaintiff QualiCenters' motion to continue briefing on the summary judgment motion is granted to permit QualiCenters to complete discovery sufficient to oppose the motion.

B.    Stay Discovery

Defendant Shasta moves for an order staying discovery pending resolution of its summary judgment motion.  As noted above, Shasta asserts that application of 25 U.S.C. § 1623(b) precludes all of QualiCenters' claims and is a matter of law for the Court to decide on a very narrow set of facts.  However, as noted above, prudence dictates further development of the record so that QualiCenters may be afforded an opportunity to develop its theory of the case.

> "Broad discretion is vested in the trial court to permit or deny discovery, and its decision to deny discovery will not be disturbed except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant." Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002) (internal quotations omitted). When determining whether to stay discovery until resolution of a pending motion for summary judgment, district courts in this circuit generally apply a two-part test. Specifically, a protective order staying discovery is appropriate only if: (1) the pending motion is potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is directed; and 2) the pending dispositive motion can be decided absent additional discovery. See Pac. Lumber Co. v. Nat'l Union Fire Ins. Co., 220 F.R.D. 349, 351-352 (N.D. Cal. 2003) (declining to stay discovery because the pending summary judgment motion would neither resolve all the questions in the case nor "moot the requested discovery");

accord Seven Springs L.P. v. Fox Capital Mgmt. Corp., 2007 U.S. Dist. LEXIS 32068, at *3-4 (E.D. Cal. Apr. 18, 2007).

Bobosky v. Adidas AG, 2011 WL 13250943, at *1 (D. Or. Oct. 13, 2011).

Although the pending summary judgment motion is potentially dispositive of the entire case, as noted above, additional discovery is necessary to determine the motion fully and fairly. Accordingly, the motion to stay is denied.

CONCLUSION

Plaintiff QualiCenters Salem, LLC's motion to continue briefing on defendant Shasta Administrative Services, Inc.'s motion for summary judgment (ECF 40) and motion to continue pursuant to Fed. R. Civ. P. 54(d) (ECF 41) are granted.  Defendant Shasta's motion to stay (ECF 44) is denied.  Discovery is ongoing until February 25, 2022.  Because it may be necessary to resolve discovery disputes in order to allow plaintiff to fully respond to the pending motion for summary judgement and discovery may alter the contentions raised in the summary judgment motion, the motion for summary judgment (ECF 31) is denied without prejudice to be refiled at the conclusion of the discovery identified by plaintiff in its Rule 54(d) motion.

DATED this 31st day of January, 2022.

_____/s/ Jolie A. Russo_____
Jolie A. Russo
United States Magistrate Judge